UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JASON ROBERT WYLIE,
and LEAH S. WYLIE,

        Debtors.
_____/

TIMOTHY MILLER, TRUSTEE,

        Plaintiff,

vs.

CHRISTOPHER SULLIVAN,

        Defendant.
_____/

TIMOTHY MILLER, TRUSTEE,

        Plaintiff,

vs.

KATHLEEN SULLIVAN,

        Defendant.
_____/

Case No. 20-49216

Chapter 7

Judge Thomas J. Tucker

Adv. Pro. No. 21-4087

Adv. Pro. No. 21-4088

**OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I. Introduction**

    These two adversary proceedings concern the concept of a "resulting trust" under Arkansas law.

    In these adversary proceedings, the Chapter 7 bankruptcy Trustee seeks to avoid two transfers of real estate located in Scott County, Arkansas, which the bankruptcy Debtors Jason

Wylie and Leah Wylie made to Jason Wylie's mother and stepfather in 2018. The parties agree that the transfers were made within 2 years before the Debtors filed their bankruptcy petition. The parties further agree that the transfers were made for no consideration, and while the Debtors were insolvent.

The Trustee alleges that the transfers were made "with actual intent to hinder, delay, or defraud" creditors, making the transfers avoidable under 11 U.S.C. § 548(a)(1)(A). The Trustee also alleges that the transfers are avoidable as constructively fraudulent, under 11 U.S.C. § 548(a)(1)(B), because the Debtors "received less than a reasonably equivalent value" in exchange for each of the transfers. The Trustee seeks to recover the property transferred, under 11 U.S.C. § 550(a)(1).

The Defendants deny that they or the Debtors had any fraudulent intent. And they allege that before the Debtors made the transfers, they held only legal title to the property at issue, subject to a resulting trust under Arkansas law, in Defendants' favor. As such, Defendants contend, the property transferred had no value to either of the Debtors. Therefore, Defendants say, the Debtors received "reasonably equivalent value" for the transfers — *i.e.*, $0.00.

The Trustee disputes that there was any resulting trust, and contends that the Debtors received much less than reasonably equivalent value for the transfers. The Court agrees with the Trustee on these points, and concludes that the transfers must be avoided as constructively fraudulent, based on 11 U.S.C. § 548(a)(1)(B).

## II. Procedural history

In each of these adversary proceedings, the parties filed cross motions for summary

judgment,[1] each seeking summary judgment on all three counts of the Trustee's First Amended Complaint.[2] The Court held a telephonic hearing on the motions on September 1, 2021, and took them under advisement. The Court is addressing the motions in each case in this single opinion, because the arguments and many of the facts in the two cases are the same.

In each case, the Court has considered all of the oral and written arguments of the parties, all of the briefs and exhibits filed by the parties, and all of the authorities cited by the parties. For the reasons stated below, the Court must deny the Defendants' summary judgment motions and grant the Trustee's summary judgment motion, in part.

**III. Jurisdiction**

This Court has subject matter jurisdiction over the Chapter 7 bankruptcy case and over each of these adversary proceedings under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). These are core proceedings under 28 U.S.C. § 157(b)(2)(H).

These proceedings also are "core" because they each fall within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11. *See* 28 U.S.C. § 1334(b). Matters within either of these categories are deemed to be core proceedings. *Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *id.*, including the provisions of 11 U.S.C. §§ 548(a) and 550(a)(1). Each of

---

[1] Docket ## 21, 24 in Adv. No. 21-4087 and Docket ## 21, 25 in Adv. No. 21-4088.

[2] The Trustee's First Amended Complaint is filed at Docket # 13 in each adversary proceeding. In each case, the counts in the Trustee's First Amended Complaint (Docket # 13) are titled as follows: "Count I - Avoidance of Pre-petition Transfer - 11 U.S.C. §548(a)(1)(b);" "Count II - Avoidance of Pre-petition Transfer - 11 U.S.C. §548(a)(1)(a);" and "Count III - Liability of transferee and preservation of transfer - 11 U.S.C. §[§]550 and 551."

3

these proceedings is one "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## IV. Summary judgment standards

In considering whether summary judgment should be granted for any of the parties, the Court has applied the standards governing motions for summary judgment under Fed. R. Civ. P. 56, which the Court now adopts from its prior opinion in the case of *Schubiner v. Zolman* (*In re Schubiner*), 590 B.R. 362, 376-77 (Bankr. E.D. Mich. 2018):

> This Court has previously described the standards governing a motion for summary judgment, as follows:
>
> Fed.R.Civ.P. 56(a), applicable to bankruptcy adversary proceedings under Fed. R. Bankr. P. 7056, provides that a motion for summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *In Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149–50 (6th Cir.1995), the court elaborated:
>
>> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the [trier of fact]. Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.
>>
>> If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact]. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in

> the light most favorable to the nonmoving party.
> However, if the evidence is insufficient to
> reasonably support a . . . verdict in favor of the
> nonmoving party, the motion for summary judgment
> will be granted. Thus, the mere existence of a
> scintilla of evidence in support of the [nonmoving
> party's] position will be insufficient; there must be
> evidence on which the [trier of fact] could
> reasonably find for the [nonmoving party].
> . . .
>
> Finally, the Sixth Circuit has concluded that, in the
> "new era" of summary judgments that has evolved
> from the teachings of the Supreme Court in
> *Anderson* [v. *Liberty Lobby, Inc*., 477 U.S. 242, 106
> S.Ct. 2505, 91 L.Ed.2d 202 (1986)], *Celotex* [*Corp.
> v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91
> L.Ed.2d 265 (1986) ] and *Matsushita* [*Electric
> Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S.
> 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ], trial
> courts have been afforded considerably more
> discretion in evaluating the weight of the
> nonmoving party's evidence. The nonmoving party
> must do more than simply show that there is some
> metaphysical doubt as to the material facts. If the
> record taken in its entirety could not convince a
> rational trier of fact to return a verdict in favor of
> the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining whether the moving party has met its burden, a court must "believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir.1999) (relying on *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041–42 (6th Cir.1992)).

*McCallum v. Pixley* (*In re Pixley* ), 456 B.R. 770, 774–75 (Bankr. E.D. Mich. 2011).

## V.  Facts

The following facts are undisputed.

**A. The Sullivans**

As noted above, Defendant Christopher Sullivan is the Debtor Jason Wylie's stepfather, and Defendant Kathleen Sullivan is Jason Wylie's mother. The Defendants were married as of least 1990, and later were divorced, sometime before December 31, 2009.

**B. The Sullivans purchased the real property at issue in 1990 and 1991, and Christopher Sullivan conveyed some of the property to Kathleen Sullivan in 2009, after their divorce.**

The real estate involved in this case is located in Scott County, Arkansas. The recitation of the history of this real estate in the Trustee's brief is accurate, based on the evidence in the record, and undisputed:

> Christopher and Kathleen Sullivan purchased approximately 268.75 acres of property in Scott County Arkansas in 1990 ("1990 Property"). Christopher and Kathleen Sullivan purchased approximately 81 acres of property in Scott County Arkansas in 1991 ("1991 Property") . . . . On December 31, 2009 (after Christopher and Kathleen Sullivan's divorce), through a series of four quit claim deeds, the parties transferred the 1991 Property and approximately 140 acres of the 1990 Property to Kathleen Sullivan. Christopher Sullivan retained approximately 117.50 acres of the 1990 Property.[3]

**C. The Sullivans conveyed to Jason Wylie a one-half interest in their respective properties, in 2014 (Kathleen) and in 2017 (Christopher).**

The Trustee's recitation continues by describing transfers made by the Defendants to Jason Wylie, in 2014 by Kathleen Sullivan and in 2017 by Christopher Sullivan. As for Kathleen:

---

[3] Trustee's Br. in Supp. of Trustee's Mot. for Summ. J. (Docket # 24 in Adv. No. 21-4087, the "Trustee's Br. in 21-4087") at pdf p. 7 (footnotes and record citations omitted). *See also* Trustee's Br. in Supp. of Trustee's Mot. for Summ. J. (Docket # 25 in Adv. No. 21-4088, the "Trustee's Br. in 21-4088") at pdf p. 7 (footnotes and record citations omitted) (same).

6

> On March 24, 2014, Kathleen Sullivan transferred a ½ interest in
> the 1991 Property and her portion of the 1990 Property to her son
> Jason Wylie via quit claim deed for stated consideration of $0.00
> almost 23 years after the Properties were acquired.[4]

Kathleen Sullivan's 2014 deed, entitled "Warranty Deed," which was recorded on March 24, 2014, conveyed her property to herself and Jason Wylie, "as joint tenants with full rights of survivorship, and not as tenants in common."[5]

As for Christopher:

> On July 12, 2017, Christopher Sullivan transferred [a ½ interest in]
> his portion of the 1990 Property to his stepson Jason Wylie . . . for
> stated consideration of $0.00 almost 26 years after the Properties
> were acquired.[6]

Christopher Sullivan's 2017 deed, entitled "Warranty Deed," which was recorded on July 12, 2017, conveyed his property to himself and Jason Wylie, "as joint tenants with rights of survivorship, and not as tenants in common."[7]

### D. The Debtors Jason Wylie and his wife, Leah Wylie, conveyed their interests in the properties back to Kathleen Sullivan and Christoper Sullivan in 2018, for no consideration and while the Debtors were insolvent.

By two Warranty Deeds, each dated August 23, 2018 and recorded on October 12, 2018, the Debtors transferred their interests in the Arkansas properties back to Kathleen Sullivan and

---

[4] Trustee's Br. in 21-4088 at pdf pp. 7-8 (footnotes and record citations omitted).

[5] Docket # 25-1 in Adv. No. 21-4088, Ex. I.

[6] Trustee's Br. in 21-4087 at pdf pp. 7-8 (footnotes and record citations omitted).

[7] Docket # 24-1 in Adv. No. 21-4087, Ex. I.

7

Christopher Sullivan (the "2018 Transfers").[8] The property described in the Debtors' deed to Kathleen Sullivan consisted of three tracts of land, containing a total of approximately 250.88 acres, and the property described in the Debtors' deed to Christopher Sullivan consisted of land in the amount of approximately 117.50 acres.

The parties agree that the 2018 Transfers were made within 2 years before the date on which the Debtors filed their bankruptcy petition.[9] The parties also agree that the Debtors were insolvent when they made these transfers, and that the Debtors received no consideration for these transfers.

### E. The resulting trust issue

The Trustee alleges that the value of the one-half interest in the land the Debtors transferred to Kathleen Sullivan was "not less than $439,040.00," and that the value of the one-half interest in the land the Debtors transferred to Christopher Sullivan was "not less than $205,625.00."[10] In the briefing and arguments about the Motions, the Defendants have not disputed the Trustee's assertions about the value of the land at issue. But the Defendants contend that the value of the one-half interest transferred by the Debtors, by each of the two 2018 deeds, was zero, because the Debtor Jason Wylie held only legal title to these one-half interests, and the equitable interests were owned entirely by Kathleen and Christopher Sullivan, as the

---

[8] Docket # 25-1 in Adv. No. 21-4088, Ex. A (Warranty Deed to Kathleen Sullivan); Docket # 24-1 in Adv. No. 21-4087, Ex. A (Warranty Deed to Christopher Sullivan).

[9] The Debtors filed their joint bankruptcy petition on August 27, 2020. Under 11 U.S.C. § 548(d)(1), the transfers at issue are deemed to have been made when they were perfected, *i.e.*, when the deeds were recorded, on October 12, 2018.

[10] Trustee's Br. in 21-4087 at pdf p. 5; Trustee's Br. in 21-4088 at pdf p. 5.

beneficiaries of resulting trusts.

## VI. Discussion

### A. Avoidance of the 2018 transfers as constructively fraudulent, under 11 U.S.C. § 548(a)(1)(B)

The Trustee seeks to avoid the 2018 Transfers based on 11 U.S.C. §§ 548(a)(1)(A) and 548(a)(1)(B). In pertinent part, these sections state:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer . . . ; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548(a)(1).

The Court first will discuss avoidance under § 548(a)(1)(B), which applies to transfers that are sometimes referred to as constructively fraudulent transfers. Based on the undisputed facts and arguments of the parties, it is clear that the following elements for avoidance of each of the 2018 Transfers are satisfied:

- a transfer of an interest in property of the Debtors; and

- the transfer was made within 2 years before the Debtors filed their bankruptcy petition; and

9

• the Debtors were insolvent on the date the transfer was made.

That leaves only the element that the Debtors "received less than a reasonably equivalent value in exchange for such transfer."

The Defendants argue that before the 2018 Transfers were made, the Debtors, and the Debtor Jason Wylie in particular, held only legal title to a one-half interest in the real estate, with a right of survivorship. Defendants further argue that they held the entire equitable ownership of their respective real properties. This, Defendants say, is because they were the beneficiaries of a "resulting trust" under Arkansas law. As a result, Defendants argue, the Debtors' only interest in the real estate had no value to the Debtors. From this, the Defendants further argue the following: the "reasonably equivalent value" of the transfer of the Debtors' interests, in the 2018 Transfers, was zero. The transfers therefore were not for "less than reasonably equivalent value," and the transfers cannot be avoided as constructively fraudulent under § 548(a)(1)(B).

The Trustee disputes that there was any resulting trust.

The parties correctly agree that the law of Arkansas, where the real property at issue is located, governs the issue of whether there was a resulting trust. *See, e.g., United States Trustee v. Beard* (*In re Beard*), 595 B.R. 274, 288 (Bankr. E.D. Ark. 2018); *Cowden v. Ramsay* (*In re Ramsay*), 154 B.R. 531, 533 (Bankr. E.D. Ark. 1993) (citations omitted) ("While federal bankruptcy law determines the effect of legal or equitable interests in property, the Court looks to state law to determine the nature and extent of the interest.").

**1. Arkansas law regarding resulting trusts**

Under Arkansas law, "[t]he party asserting a resulting trust has a heavy burden of proof[.]" *Walker v. Hooker*, 667 S.W.2d 637, 642 (Ark. 1984). The following is an accurate

10

statement of the law of Arkansas, regarding what a resulting trust is and what requirements must be met in order to show the existence of a resulting trust:

> [A] resulting trust is said to arise when property is bought by one person with money or assets of another and title is taken in the name of the purchaser rather than of the person furnishing the consideration. **In order to constitute a resulting trust the purchase money or a specified part of it must have been paid by another or secured by another at the same time, or previous to the purchase, and must be a part of the transaction. In other words, the trust results from the original transaction at the time it takes place and at no other time, and is founded upon the actual payment of money and upon no other ground.**

*Andres v. Andres*, 613 S.W.2d 404, 406, 407 (Ark. Ct. App. 1981) (emphasis added) (citations omitted).

In addition to the *Andres* case just quoted, at least seven Arkansas Supreme Court cases have held that all of the above requirements must be met in order to establish the existence of a resulting trust. *See Walker*, 667 S.W.2d at 642; *Wargo v. Wargo*, 287 S.W.2d 879, 882 (Ark. 1956); *Reeves v. Reeves*, 264 S.W. 979, 980 (Ark. 1924); *Pumphrey v. Furlow,* 222 S.W. 31, 33 (Ark. 1920); *Milner v. Freeman*, 40 Ark. 62, 67, 68 (1882); *DuVal v. Marshall*, 30 Ark. 230, 245 (1875); *Sale v. McLean*, 29 Ark. 612, 630 (1874).

As applied to real estate, therefore, these cases establish the following five requirements to demonstrate the existence of a resulting trust:

1. a purchase of real estate;

2. a payment of all or part of the purchase price by the alleged trust beneficiary;

3. which payment was made at or before the time of the purchase of the real estate;

4. which payment was made as part of the original real estate purchase transaction; and

5. as part of the original real estate purchase transaction, the taking of title in the name of the alleged trustee, rather than in the name of the alleged trust beneficiary.

Even if all of the above requirements for a resulting trust are met, Arkansas law imposes an additional hurdle when the title holder is a spouse or child of the person who paid the purchase price for the property. In that situation, there is a presumption against a resulting trust, because there is a presumption that the person paying the purchase price intended the property to be a gift to his or her spouse or child. *See Walker*, 667 S.W.2d at 642; *Milner*, 40 Ark. at 67. But in that situation, such presumption "may be rebutted by evidence that the person who pays the purchase price did not intend for the transferee to have the beneficial interest in the property." *Walker*, 667 S.W.2d at 642 (citation omitted).[11]

**2. Application of Arkansas law to this case**

Given the undisputed facts in this case, Defendants clearly cannot meet the requirements to show a resulting trust under Arkansas law. At the time when the Defendants each conveyed an interest in their real estate to the Debtor Jason Wylie, in 2014 in the case of Kathleen Sullivan, and in 2017 in the case of Christopher Sullivan, the Defendants had owned all of the real estate for 23 years or more. The Defendants jointly purchased the real estate in 1990 and 1991, and Christopher had deeded some of the jointly-owned real estate to Kathleen in 2009, after their divorce. When Kathleen Sullivan deeded a one-half interest in her real estate, with full right of

---

[11] Defendants attempt to rebut such a presumption in these cases, by each filing affidavits stating that they added Jason Wylie to the title of their land only "[f]or estate planning purposes." (*See* Docket # 21 in Adv. No. 21-4087, Ex. 5 (Aff. of Christopher Sullivan); Docket # 36 in Adv. No. 21-4087, at pdf p. 2 (Second Aff. of Christopher Sullivan); Docket # 21 in Adv. No. 21-4088, Ex. 5 (Aff. of Kathleen Sullivan); Docket # 32 in Adv. No. 21-4088, at pdf pp. 1-2 (Second Aff. of Kathleen Sullivan)). But this evidence is immaterial, **unless** Defendants can first meet all of the five requirements necessary to show a resulting trust, listed above. Defendants cannot do so, for the reasons discussed in Part VI.A.2 of this Opinion, below.

survivorship, to Jason Wylie in 2014, there was no purchase of the real estate. And Kathleen paid nothing at that time to purchase the real estate. Kathleen's action in 2014, of placing title to a one-half interest in her real estate in Jason Wylie's name, occurred many years after she and Christopher paid the purchase price for the property in 1990 and 1991, and many years after the original 1990 and 1991 transactions by which Christopher and Kathleen purchased the real estate. Therefore, no resulting trust arose in favor of Kathleen Sullivan when she gave Jason Wylie the 2014 deed. She simply changed from being the full owner to being the one-half owner, along with Jason Wylie, of the real estate, with each of them having a right of survivorship.

The same things are true with respect to Christopher Sullivan's action in 2017, when Christopher deeded to Jason Wylie a one-half interest in Christopher's real estate, with right of survivorship. This transfer to Jason Wylie took place roughly 26 years after Christopher and Kathleen Sullivan purchased, and paid the purchase price for, the real estate in 1990 and 1991. There was no purchase of the property in 2017, and Christopher Sullivan paid nothing for the real property at that time, since by that time he already had owned the property for over 26 years.

Given these facts, it is immaterial whether Christopher and Kathleen Sullivan intended their transfers to Jason Wylie to be only for "estate planning purposes," as they say in their affidavits. (*See* footnote 11). That type of evidence could only be material if all five of the requirements for a resulting trust, listed in Part VI.A.1 of this Opinion, were met, and then only to rebut a presumption that the transfer was intended as a gift to the transferor's child. But the five requirements are not met, so no resulting trust can arise, as a matter of law. *Cf. Wargo*, 287 S.W.2d at 882 (citations omitted) ("Oral testimony of an agreement to create a trust falls within the statute of frauds, and where a trust is not manifested by any writing and no fraud has been

13

practiced in obtaining the title, a resulting trust can only arise from the payment of the purchase price at the time of the purchase. It can never arise out of an agreement.").

For these reasons, it is clear that under Arkansas law,[12] no resulting trust arose in favor of either Kathleen Sullivan or Christopher Sullivan.

The result is that just before the 2018 Transfers, Jason Wylie owned the legal title and full equitable ownership of an undivided one-half interest in the real estate at issue, with a right of survivorship.[13] That is clear from the unambiguous terms of Kathleen Sullivan's 2014 deed to Jason, and Christopher Sullivan's 2017 deed to Jason. And that is what the 2018 Transfers transferred to Kathleen and Christopher Sullivan, for no consideration. Therefore, in exchange for each of the 2018 Transfers, the Debtors Jason and Leah Wylie received less than a reasonably equivalent value. Defendants' only defense fails.

For these reasons, the 2018 Transfers are both avoidable under 11 U.S.C. § 548(a)(1)(B). The Court must grant summary judgment for the Trustee, avoiding these transfers.

---

[12] Among other things, Defendants cite *Stewart v. Shubert* (*In re Stewart*), 368 B.R. 445 (Bankr. E.D. Pa. 2007) to try to support their resulting trust argument. That case had facts similar to the present cases, but the court in *Stewart* applied the law of *Pennsylvania* to find a resulting trust. *See* 368 B.R. at 450. The *Stewart* case says nothing about Arkansas law, which applies here. The law of resulting trusts varies from state to state. For example, resulting trusts are not recognized at all under Michigan law. *See Musial v. Yatzik*, 45 N.W.2d 329, 331 (Mich. 1951) (citing Mich. Comp. Laws § 555.7). And Pennsylvania law, as interpreted by the bankruptcy court in *Stewart*, obviously is quite different from the law of Arkansas.

[13] There is no basis under Arkansas law for holding otherwise. For example, the Defendants do not argue that there was a constructive trust under Arkansas law with respect to the real property. As a result, Defendants have forfeited any such argument. And such an argument would be without merit. Under Arkansas law, constructive trusts "are imposed against a person who secures legal title by violating a confidential relationship or fiduciary duty or who intentionally makes a false oral promise to hold legal title for a specific purpose and, after having acquired the title, claims the property for himself." *Herring v. Ramsey*, 626 S.W.3d 116, 119-20 (Ark. Ct. App. 2021) (citation omitted). Defendants do not allege that Jason Wylie or Leah Wylie engaged in any such conduct.

**B. Avoidance of the 2018 transfers under 11 U.S.C. § 548(a)(1)(A)**

Because the 2018 Transfers will be avoided as constructively fraudulent, it is not necessary to determine whether the transfers also are avoidable under 11 U.S.C. § 548(a)(1)(A), because of an actual fraudulent intent by the Debtors in making the transfers. The Trustee's avoidance claim that is based on § 548(a)(1)(A) will be dismissed in each adversary proceeding, as moot.

**C. Recovery of the property transferred, under 11 U.S.C. § 550(a)(1)**

As initial transferees of the 2018 Transfers, Defendants are subject to 11 U.S.C. § 550(a)(1), which states in pertinent part that "to the extent a transfer is avoided under section . . . 548 . . ., the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer . . . ." In seeking summary judgment, the Trustee has not requested a judgment for the value of the property transferred. So the Court's judgment will provide that the Trustee recovers the property transferred by the 2018 Transfers.

## VII. Conclusion

For the reasons stated in this Opinion, the Court will enter a separate order in each of these adversary proceedings, granting summary judgment for the Trustee on Counts I and III of his First Amended Complaint, and dismissing Count II of the First Amended Complaint as moot. The Orders also will deny the summary judgment motions filed by the Defendants.

**Signed on September 20, 2021**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**