UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

                                                      Case No. 20-49216

JASON ROBERT WYLIE,
and LEAH S. WYLIE,                               Chapter 7

               Debtors.                    Judge Thomas J. Tucker
_____/

TIMOTHY MILLER, TRUSTEE,

               Plaintiff,

vs.                                         Adv. Pro. No. 21-4087

CHRISTOPHER SULLIVAN,

               Defendant.
_____/

TIMOTHY MILLER, TRUSTEE,

               Plaintiff,

vs.                                           Adv. Pro. No. 21-4088

KATHLEEN SULLIVAN,

               Defendant.
_____/

**OPINION REGARDING POST-REMAND MOTIONS FOR SUMMARY JUDGMENT**

## I. Introduction

These two adversary proceedings are before the Court on cross-motions for summary judgment, following a remand from the United States District Court. For the reasons stated below, the Court will deny each of the motions.

In these adversary proceedings, the Chapter 7 bankruptcy Trustee seeks to avoid two

transfers of real estate located in Scott County, Arkansas. The bankruptcy Debtors Jason Wylie and Leah Wylie made the transfers in 2018, to Jason Wylie's mother and stepfather, Defendants Kathleen Sullivan and Christopher Sullivan. The parties agree that the transfers were made within 2 years before the Debtors filed their bankruptcy petition. The parties further agree that the transfers were made for no consideration, and while the Debtors were insolvent.

The Trustee alleges that the transfers were made "with actual intent to hinder, delay, or defraud" creditors, making the transfers avoidable under 11 U.S.C. § 548(a)(1)(A). The Trustee also alleges that the transfers are avoidable as constructively fraudulent, under 11 U.S.C. § 548(a)(1)(B), because the Debtors "received less than a reasonably equivalent value" in exchange for each of the transfers.[1] The Trustee seeks to recover the property transferred, under 11 U.S.C. § 550(a)(1).

The Defendants deny that they or the Debtors had any fraudulent intent. And they allege that before the Debtors made the transfers, the Debtors held only legal title to the property at issue, subject to an implied trust under Arkansas law in the Defendants' favor. As such, the

---

[1] These provisions in § 548(a) state, in pertinent part:

> (1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted; or

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer . . .; and

> (ii)(I) was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer . . . .

Defendants contend, the property interests transferred by the Debtors had no value to either of the Debtors. Therefore, the Defendants say, the Debtors received "reasonably equivalent value" for the transfers — *i.e.*, $0.00.

## II. Prior proceedings, including the district court remand

In an opinion and orders filed on September 20, 2021, this Court granted summary judgment for the Trustee, based on the Trustee's constructive fraudulent transfer claim. *Miller v. Sullivan* (*In re Wylie*), 633 B.R. 542 (Bankr. E.D. Mich. 2021).[2] In making that decision, this Court viewed the Defendants' only asserted defense to the constructive fraudulent transfer claim, and their only argument for an implied trust, to be that before the Debtors made the transfers, the Debtors' interest in the property was subject to a "resulting trust" under Arkansas law, in Defendants' favor. This Court rejected Defendants' argument, finding that the requirements for a "resulting trust," as that concept is defined and limited under Arkansas law, were not met. As a result, the Court granted summary judgment for the Trustee, avoiding the transfers under 11 U.S.C. § 548(a)(1)(B), as constructively fraudulent. Based on that avoidance, the Court ruled that the bankruptcy estate owns a one half interest in each of the Arkansas properties at issue. The Court found it unnecessary to rule on the Trustee's other fraudulent transfer theory, under 11 U.S.C. § 548(a)(1)(A), that the Debtors' transfers were made with actual intent to hinder, delay, or defraud creditors.

The Defendants appealed. The United States District Court reversed this Court's summary judgment decision, and remanded the cases for further proceedings. *See Sullivan v.*

---

[2] *See* Docket ## 44, 45 in Adv. No. 21-4087; Docket ## 43, 44 in Adv. No. 21-4088.

*Miller*, No. 21-cv-12349, 2022 WL 2703954, at *6 (E.D. Mich. July 12, 2022).[3]  The district

court characterized the type of "resulting trust" discussed in this Court's summary judgment

decision as a "purchase money resulting trust," and ruled that there are other types of resulting

trusts that are possible under Arkansas law.  *See* 2022 WL 2703954, at *4-5.  The district court

further ruled that the Defendants had sufficiently preserved for appeal an argument for such other

types of resulting trusts, which this Court had not discussed.[4]  Based on this, the district court

remanded these cases "so that the bankruptcy court may consider the broader argument."  2022

WL 2703954, at *5.  The district court further ruled that "[o]n remand, the bankruptcy court is

free to explore any other pertinent issues bearing on summary judgment, such as the Trustee's

argument based on intent to hinder creditors and the significance, if any, of [the Defendants']

agreement in February 2022 to a consent judgment for the sale of the properties."  *Id.* at *5 n.11.[5]

**III.  Proceedings after remand**

---

[3]  A copy of the district court's opinion and order appears at Docket # 70 in Adv. No. 21-4087 and at Docket # 68 in Adv. No. 21-4088.

[4]  The district court stated that "this is a case where imprecise briefing led the bankruptcy court to read [the Defendants'] position too narrowly."  *Sullivan v. Miller*, 2022 WL 2703954, at *4.  The district court further stated:

> The lawyer who represented the Sullivans before the bankruptcy court was careless in his use of words and citation to inapposite caselaw. He advocated for the existence of "resulting trusts" without expressly specifying that he did not mean purchase-money resulting trusts. And in support of his arguments, he cited Arkansas cases involving purchase money resulting trusts. It is, therefore, understandable that the bankruptcy court believed the Sullivans to be raising solely an argument of purchase-money resulting trusts.

*Id.* at *5.

[5]  The February 2022 consent judgment is discussed later in this Opinion.

After the district court's remand, in each of these adversary proceedings, the parties filed renewed motions for summary judgment,[6] each seeking summary judgment on all three counts of the Trustee's First Amended Complaint.[7] After extensive briefing by the parties, the Court held a telephonic hearing on the motions, and took them under advisement. The Court is addressing the motions in each case in this single opinion, because the arguments and many of the facts in the two cases are the same.

In each case, the Court has considered all of the oral and written arguments of the parties, all of the briefs and exhibits filed by the parties, and all of the authorities cited by the parties. For the reasons stated below, the Court must deny the Defendants' summary judgment motions and deny the Trustee's summary judgment motions. A trial will be necessary.

## IV. Jurisdiction

This Court has subject matter jurisdiction over the Chapter 7 bankruptcy case and over each of these adversary proceedings under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). These are core proceedings under 28 U.S.C. § 157(b)(2)(H).

These proceedings also are "core" because they each fall within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11. *See* 28 U.S.C. § 1334(b). Matters within either of these categories are deemed to be core proceedings. *Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This

---

[6] Docket ## 72, 76 in Adv. No. 21-4087; Docket ## 70, 74 in Adv. No. 21-4088.

[7] The Trustee's First Amended Complaint is filed at Docket # 13 in each adversary proceeding. In each case, the counts in the Trustee's First Amended Complaint (Docket # 13) are titled as follows: "Count I - Avoidance of Pre-petition Transfer - 11 U.S.C. §548(a)(1)(b);" "Count II - Avoidance of Pre-petition Transfer - 11 U.S.C. §548(a)(1)(a);" and "Count III - Liability of transferee and preservation of transfer - 11 U.S.C. §[§]550 and 551."

5

is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *id.*, including the provisions of 11 U.S.C. §§ 548(a) and 550(a)(1). Each of these proceedings is one "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## V. Summary judgment standards

In considering whether summary judgment should be granted for any of the parties, the Court has applied the standards governing motions for summary judgment under Fed. R. Civ. P. 56, which the Court now adopts and incorporates by reference from its previous summary judgment opinion filed in these cases. *Miller v. Sullivan*, 633 B.R. at 546-47 (quoting *Schubiner v. Zolman* (*In re Schubiner*), 590 B.R. 362, 376-77 (Bankr. E.D. Mich. 2018)). Those standards include, among other things, the requirements that in deciding a summary judgment motion, (a) the Court "'must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party[,]'" *id.* at 546 (quoting *Schubiner*, 590 B.R. at 376 (citation omitted)); and (b) the Court "must 'believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant.'" *Id.* at 547 (citations omitted).

## VI. Undisputed facts recited in this Court's earlier summary judgment opinion

The Court now will repeat facts that were stated in Part V of its earlier summary judgment opinion. *Miller v. Sullivan*, 633 B.R. at 547-49. The following facts remain undisputed.

### A. The Sullivans

Defendant Christopher Sullivan is the Debtor Jason Wylie's stepfather, and Defendant Kathleen Sullivan is Jason Wylie's mother. The Defendants were married as of least 1990, and

6

later were divorced, sometime before December 31, 2009.

**B. The Sullivans purchased the real property at issue in 1990 and 1991, and Christopher Sullivan conveyed some of the property to Kathleen Sullivan in 2009, after their divorce.**

The real estate involved in this case is located in Scott County, Arkansas.  The recitation

of the history of this real estate in the Trustee's brief is accurate, based on the evidence in the

record, and undisputed:

> Christopher and Kathleen Sullivan purchased approximately
> 268.75 acres of property in Scott County Arkansas in 1990 ("1990
> Property").  Christopher and Kathleen Sullivan purchased
> approximately 81 acres of property in Scott County Arkansas in
> 1991 ("1991 Property") . . . . On December 31, 2009 (after
> Christopher and Kathleen Sullivan's divorce), through a series of
> four quit claim deeds, the parties transferred the 1991 Property and
> approximately 140 acres of the 1990 Property to Kathleen Sullivan.
> Christopher Sullivan retained approximately 117.50 acres of the
> 1990 Property.[8]

**C. The Sullivans conveyed to Jason Wylie a one-half interest in their respective properties, in 2014 (Kathleen) and in 2017 (Christopher).**

The Trustee's recitation continues by describing transfers made by the Defendants to

Jason Wylie, in 2014 by Kathleen Sullivan and in 2017 by Christopher Sullivan.  As for

Kathleen:

> On March 24, 2014, Kathleen Sullivan transferred a ½ interest in
> the 1991 Property and her portion of the 1990 Property to her son
> Jason Wylie via quit claim deed for stated consideration of $0.00

---

[8]  Trustee's Br. in Supp. of Trustee's Mot. for Summ. J. (Docket # 24 in Adv. No. 21-4087, the "Trustee's Br. in 21-4087") at pdf p. 7 (footnotes and record citations omitted).  *See also* Trustee's Br. in Supp. of Trustee's Mot. for Summ. J. (Docket # 25 in Adv. No. 21-4088, the "Trustee's Br. in 21-4088") at pdf p. 7 (footnotes and record citations omitted) (same).

almost 23 years after the Properties were acquired.[9]

Kathleen Sullivan's 2014 deed, entitled "Warranty Deed," which was recorded on March 24, 2014, conveyed her property to herself and Jason Wylie, "as joint tenants with full rights of survivorship, and not as tenants in common."[10]

>As for Christopher:

>> On July 12, 2017, Christopher Sullivan transferred [a ½ interest in] his portion of the 1990 Property to his stepson Jason Wylie . . . for stated consideration of $0.00 almost 26 years after the Properties were acquired.[11]

Christopher Sullivan's 2017 deed, entitled "Warranty Deed," which was recorded on July 12, 2017, conveyed his property to himself and Jason Wylie, "as joint tenants with rights of survivorship, and not as tenants in common."[12]

### D. The Debtors Jason Wylie and his wife, Leah Wylie, conveyed their interests in the properties back to Kathleen Sullivan and Christoper Sullivan in 2018, for no consideration and while the Debtors were insolvent.

By two Warranty Deeds, each dated August 23, 2018 and recorded on October 12, 2018, the Debtors transferred their interests in the Arkansas properties back to Kathleen Sullivan and Christopher Sullivan (the "2018 Transfers").[13]  The property described in the Debtors' deed to Kathleen Sullivan consisted of three tracts of land, containing a total of approximately 250.88

---

[9]  Trustee's Br. in 21-4088 at pdf pp. 7-8 (footnotes and record citations omitted).

[10]  Docket # 25-1 in Adv. No. 21-4088, Ex. I.

[11]  Trustee's Br. in 21-4087 at pdf pp. 7-8 (footnotes and record citations omitted).

[12]  Docket # 24-1 in Adv. No. 21-4087, Ex. I.

[13]  Docket # 25-1 in Adv. No. 21-4088, Ex. A (Warranty Deed to Kathleen Sullivan); Docket # 24-1 in Adv. No. 21-4087, Ex. A (Warranty Deed to Christopher Sullivan).

8

acres, and the property described in the Debtors' deed to Christopher Sullivan consisted of land in the amount of approximately 117.50 acres.

The parties agree that the 2018 Transfers were made within 2 years before the date on which the Debtors filed their bankruptcy petition.[14] The parties also agree that the Debtors were insolvent when they made these transfers, and that the Debtors received no consideration for these transfers.

### E. The resulting trust issue

The Trustee has alleged that the value of the one-half interest in the land the Debtors transferred to Kathleen Sullivan was "not less than $439,040.00," and that the value of the one-half interest in the land the Debtors transferred to Christopher Sullivan was "not less than $205,625.00."[15] In the briefing and arguments about the pre-remand summary judgment motions, as well as those about the present motions, the Defendants have not disputed the Trustee's assertions about the value of the land at issue. But the Defendants contend that the value of the one-half interest transferred by the Debtors, by each of the two 2018 deeds, was zero, because the Debtor Jason Wylie held only legal title to these one-half interests, and the equitable interests were owned entirely by Kathleen and Christopher Sullivan, as the beneficiaries of implied, resulting trusts.

## VII. Facts regarding the February 25, 2022 consent judgment

---

[14] The Debtors filed their joint bankruptcy petition on August 27, 2020. Under 11 U.S.C. § 548(d)(1), the transfers at issue are deemed to have been made when they were perfected, *i.e.*, when the deeds were recorded, on October 12, 2018.

[15] Trustee's Br. in 21-4087 at pdf p. 5; Trustee's Br. in 21-4088 at pdf p. 5.

## A. The Trustee's § 363(h) lawsuit, and the February 25, 2022 consent judgment

In briefing and arguing the present motions, the parties dispute the effect of a consent judgment that they entered into on February 25, 2022, in a separate but related adversary proceeding. The following facts about that consent judgment are undisputed.

As noted above, when this Court granted summary judgment for the Trustee on September 20, 2021, the Court ordered that the Wylie bankruptcy estate owned a one half interest in each of the Arkansas properties. After obtaining summary judgment, the Trustee sought to move forward with efforts to liquidate the bankruptcy estate's interest in the properties. The Trustee decided to try to sell the entirety of the properties, including the ownership interests of the co-owners, the Defendants, rather than only trying to sell the estate's undivided one half interest (with right of survivorship) in the properties. Section 363(h) of the Bankruptcy Code states requirements that had to be met before the Trustee could sell the estate's interest *and* the interests of the co-owners. And section 363(i) and 363(j) contain certain rules that apply to such a § 363(h) sale. *See* 11 U.S.C. §§ 363(h), 363(i), 363(j).

The Trustee sought to take advantage of the September 20, 2021 summary judgments, even though an appeal from those judgments by the Defendants was then pending. The Trustee filed a new adversary proceeding on October 12, 2021, against both of the Defendants, Adv. No. 21-4234 (the "363(h) Lawsuit"). In the complaint in the 363(h) Lawsuit, the Trustee sought, in relevant part, (1) turnover by the Defendants of the properties to the Trustee under 11 U.S.C. § 542, and (2) an order under 11 U.S.C. § 363(h) authorizing the Trustee to sell, for the benefit of the Debtors' bankruptcy estate, the properties, free and clear of the respective interests of the Defendants, and then to distribute one-half of the net proceeds of the sale to the bankruptcy estate

10

and the other half to the Defendants, based on their interests in their respective properties.[16]

As one would expect, the Trustee's complaint in the 363(h) Lawsuit stated, in relevant part, that the Court had ruled in two separate adversary proceedings that the Debtors' former interest in the Arkansas properties was property of the bankruptcy estate:

> 13. The Trustee filed two adversary proceedings to avoid the Transfers. See Adv. Pro. No.'s 21-04087-tjt and 21-04088-tjt.

> 14. This Court granted the relief sought by the Trustee in said adversary proceedings, ordering that the Transfers were avoided and deeming the Debtor Jason Robert Wylie's ½ interest in each of the [Arkansas] Properties to be property of the bankruptcy estate pursuant to 11 U.S.C. § 550. See Adv. Pro. No. 21-04087-tjt, ECF No. 45 and Adv. Pro. No. 21-04088-tjt, ECF No. 44.[17]

On October 25, 2021, the Defendants each filed an answer to the Trustee's complaint in the 363(h) Lawsuit. In response to paragraphs 13 and 14 of the Trustee's complaint, the Defendants stated that they were not contesting the allegations in those paragraphs, but noted, with regard to the allegations in paragraph 14, that an appeal was pending.[18]

On February 25, 2022, while the Defendants' appeal to the district court was still pending, and before this Court had made any substantive rulings in the 363(h) Lawsuit, the Trustee and each of the Defendants entered into and filed a stipulation for the entry of a consent

---

[16] See Docket # 1 in Adv. No. 21-4234.

[17] Id. at ¶¶ 13-14 (footnote omitted) (footnote added). In a footnote to paragraph 14, the complaint stated that any interest that the Debtor's spouse, Leah Wylie, had in the properties was also deemed to be property of the Debtors' bankruptcy estate. See id. at 3 n.1.

[18] Docket # 4 in Adv. No. 21-4234 at 2 ¶¶ 13-14.

11

judgment, to resolve the 363(h) Lawsuit.[19]  Later that same day, the Court entered the consent

judgment, entitled "Consent Final Judgment" (the "Consent Judgment"), based on the stipulation

of the parties.[20]

       Neither the Consent Judgment nor the parties' stipulation to that Consent Judgment said

anything about the Defendants' pending appeal.  This is somewhat puzzling, because at first

blush, the Consent Judgment appears to be inconsistent with the Defendants' continuation of that

appeal.  The Consent Judgment authorized the Trustee "to sell free and clear of the interests of

the co-owner, Christopher Sullivan, [the Christopher Sullivan Property]," under 11 U.S.C.

§ 363(h), and "to sell free and clear of the interests of the co-owner, Kathleen Sullivan, [the

Kathleen Sullivan Property]," under 11 U.S.C. § 363(h).[21]  And the Consent Judgment provided

that the Wylie bankruptcy estate would receive one half of the net proceeds of the sale of the

properties.[22]

       At first blush, all of that seems inconsistent with the possibility that the district court

might reverse this Court's summary judgment decision in these two adversary proceedings,

because such a reversal would remove the Wylie bankruptcy estate's ownership interest in the

Arkansas properties, and thereby would remove the bankruptcy estate's right to sell the

properties and receive any of the proceeds of such a sale.

       The Consent Judgment stated, in relevant part:

---

[19]   *See* Docket # 31 in Adv. No. 21-4234.

[20]   *See* Docket # 32 in Adv. No. 21-4234.

[21]   *Id.* at ¶¶ 1-2.

[22]   *See id.* at ¶¶ 4-5.

12

IT IS ORDERED that final judgment is entered in favor of Plaintiff Timothy J. Miller, Trustee (the "Trustee"), and against Defendants, Kathleen Sullivan and Christopher Sullivan, as follows:

1. The Trustee is authorized under 11 U.S.C. Section 363(h) to sell free and clear of the interests of the co-owner, Christopher Sullivan, the property located in Scott County, Arkansas, described as: [legal description omitted] (the "Christopher Sullivan Property").

2. The Trustee is authorized under 11 U.S.C. Section 363(h) to sell free and clear of the interests of the co-owner, Kathleen Sullivan, property located in Scott County, Arkansas, described as: [legal description omitted] (the "Kathleen Sullivan Property").

3. The Trustee is authorized to sell the Christopher Sullivan Property and the Kathleen Sullivan Property. Any proposed sale of the Christopher Sullivan Property or the Kathleen Sullivan Property (whether sold separately or as a single parcel) is subject to further approval by this Court, which approval must be sought by the filing of an appropriate motion in the main bankruptcy case, Case No. 20-49216.

4. If the Christopher Sullivan Property and the Kathleen Sullivan Property are sold separately, then upon the closing of the sale, the Trustee must pay all reasonable and customary closing costs and expenses, all outstanding encumbrances, and Broker's commissions. **The remaining net proceeds will be divided equally between the Trustee and the respective co-owner of the property**.

5. If the Christopher Sullivan Property and the Kathleen Sullivan Property are sold as a single, unified parcel, then upon the closing of the sale, the Trustee must pay all reasonable and customary closing costs and expenses, all outstanding encumbrances, and Broker's commissions. **The Trustee will retain 50% of the net proceeds**. The remaining 50% will be divided equally between Kathleen Sullivan and Christopher Sullivan unless Christopher and Kathleen Sullivan agree otherwise in a writing provided to the Trustee and to the Closing Agent prior to the closing of the sale.

6.  The Trustee is authorized to immediately commence efforts to market the Christopher Sullivan Property and the Kathleen Sullivan Property for sale including but not limited to inclusion of the Christopher Sullivan Property and the Kathleen Sullivan Property in any Multiple Listing Service or other customary listing service, and to place signs advertising the Christopher Sullivan Property or the Kathleen Sullivan Property for sale. Christopher Sullivan and Kathleen Sullivan must cooperate with Trustee and Trustee's Broker in the marketing of the Christopher Sullivan Property or the Kathleen Sullivan Property, including but not limited to making the Christopher Sullivan Property or the Kathleen Sullivan Property available for inspection, non-invasive testing, surveys, and photographs, and in allowing the Broker to show or schedule the showing of the Christopher Sullivan Property or the Kathleen Sullivan Property to other Brokers, Sales Agents and prospective buyers. The Trustee and the Broker must make reasonable efforts to provide Christopher Sullivan and/or the Kathleen Sullivan with notice of any marketing or advertising activities.

7. Subject to the provisions of Paragraph 6 of this Order, Christopher Sullivan and Kathleen Sullivan are permitted to remain in possession of their respective Property and to use their respective Property as they deem appropriate, provided that neither Christopher Sullivan or Kathleen Sullivan may cause or permit any loss or damage to their respective Property, or to allow waste to occur, and must otherwise maintain their respective Property (including all structures located on their respective Property) in reasonable condition. Christopher Sullivan and Kathleen Sullivan must maintain insurance coverage, with the Trustee as a named loss payee, on all structures on their respective Property at their own expense, and must provide proof of insurance to the Trustee upon request. If Christopher Sullivan or Kathleen Sullivan do not comply with any requirement of this Order, including the provisions of Paragraph 6 and this Paragraph 7, the Trustee may apply to this Court for an order for turnover of the Property, at which time Christopher Sullivan and Kathleen Sullivan will be required to vacate the Christopher Sullivan Property and the Kathleen Sullivan Property.

8. This is a final judgment that concludes this adversary

proceeding.  This adversary proceeding now will be closed.[23]

**B.  Events occurring after the entry of the Consent Judgment**

After the entry of the Consent Judgment, on February 25, 2022, none of the parties took any steps to seek or obtain the dismissal of the Defendants' pending appeal in the district court. Rather, they left that appeal, which by then had been fully briefed, pending and awaiting decision.  As noted above, that decision by the district court came, more than four months later, on July 12, 2022.

The undisputed evidence in the record makes clear that when the parties stipulated to the entry of the Consent Judgment, they made no express agreement that the district court appeal would be dismissed.  Nor did they make any express agreement that the appeal would continue. And the evidence further shows that even after the entry of the Consent Judgment, the Defendants repeatedly expressed the hope that they would win their appeal, and that such an outcome would prevent the Trustee from selling the Arkansas properties.  And the Trustee knew this at the time.

On June 7, 2022, while the district court appeal was still pending, the Trustee filed a motion seeking authority to sell the Arkansas properties to two specific buyers (the "Sale Motion").[24]  In the Sale Motion the Trustee stated that he has "received an offer to purchase the Arkansas Propert[ies] from Moses Edwards and Kristy Michelle Edwards ("Proposed

---

[23]  *Id.* at ¶¶ 1-8 (emphasis added).

[24]  Docket # 142 in Case No. 20-49216.

15

Purchasers") for $600,000.00[.]"[25] The Sale Motion sought authority to sell "free and clear of all liens, taxes, encumbrances and interests, except for zoning ordinances, building and use restrictions, utility easements, and the like[;]" after the sale to "distribute to Christopher Sullivan, on the basis of his ½ co-owner interest of 117.50 acres of the 367.50 total acreage of the Property, 15.99% of the net proceeds of the sale, pursuant to 11 U.S.C. § 363(j)[:] after the sale to "distribute to Kathleen Sullivan, on the basis of her ½ co-owner interest of 250 acres of the 367.50 total acreage of the Property, 34.01% of the net proceeds of the sale, pursuant to 11 U.S.C. § 363(j)[;]" and waiving "[a]ny stay pertaining to this sale under F.R. Bankr. P. 6004(g) and 6006(d)[.]"[26]

On June 8, 2022, the day after the Trustee filed his Sale Motion, the Defendants filed in the district court a renewed motion for a stay of the sale of the properties, pending the outcome of the Defendants' appeal.[27] On June 17, 2022, the Trustee filed a response, objecting to the stay motion.[28] In that response, one of the Trustee's arguments was that the Defendants could not show a likelihood of success on the merits of the appeal (one of the factors a court must consider in deciding whether to grant or deny a stay pending an appeal), because "the Bankruptcy Court's

[25] Docket # 142 in Case No. 20-49216 at ¶ 6; *see also* Ex. 7 to Docket # 142 in Case No. 20-49216 (Real Estate Contract (Residential)).

[26] Ex. 1 to Docket # 142 in Case No. 20-49216 (proposed "Order Approving Sale Procedures and Transferring Liens and Other Interests To Sale Proceeds") at ¶¶ 7, 10-12.

[27] Docket # 20 in District Court Case No. 21-cv-12349. The Defendants had previously filed a motion for a stay of the sale of the properties, on December 27, 2021. (Docket # 13 in District Court Case No. 21-cv-12349). The district court denied that motion on January 26, 2022, on the basis that "[n]o sale of the propert[ies] has been authorized or made imminent." (Docket # 19 in District Court Case No. 21-cv-12349).

[28] Docket # 21 in District Court Case No. 21-cv-12349.

Consent Judgment . . . allows for the sale of the Arkansas Propert[ies,]" and "[the Defendants] did not appeal the Consent Judgment and the Consent Judgment is final and non-appealable."[29]

On June 28, 2022, while their renewed motion for a stay of a sale of the Arkansas properties was still pending in the district court, the Defendants filed in this Court an objection to the Sale Motion (the "Sale Objection").[30]  In the Sale Objection, the Defendants argued, in relevant part:

> The Trustee has yet to receive a *bona fide* offer for the Arkansas Propert[ies].  The purported offer from Mr. and Mrs. Edwards which is the subject of the Trustee's [Sale M]otion is not a *bona fide* offer.  **Rather, it is illusory and is being advanced by the Trustee in desperation, to try and close a sale before the appeal by the Sullivans is decided in their favor.  A decision in their favor in the appeal should result in the Trustee having no interest in the Arkansas Property.**[31]

On July 7, 2022, the Trustee filed a response to the Sale Objection (the "Sale Objection Response").[32]  In that response, the Trustee relied on the Consent Judgment for his authority "to proceed with a sale of the Propert[ies] free and clear of the interests of the co-owners [(the Defendants).]"[33]  The Trustee acknowledged that the Defendants' appeal was still pending; and that Defendant Christopher Sullivan was advising potential buyers that if the appeal was decided in favor of the Defendants, the Trustee could not sell the Properties:

---

[29]  *Id.* at pdf p.10.

[30]  *See* Docket # 152 in Case No. 20-49216.

[31]  *Id.* at 2 (footnoted added) (emphasis added) (italics in original).

[32]  Docket # 154 in Case No. 20-49216.

[33]  *Id.* at pdf pp. 1-2.

Consistent with the terms of the Sale Order, the Trustee, through Mr. Street, marketed the property by advertisement and by placing signs at the Propert[ies]. Mr. Street physically showed the Propert[ies] to at least two potential buyers. **On each occasion, Mr. Sullivan made a point of advising the potential buyer that (1) there was a pending appeal that, if granted, would prevent any sale from occurring**; and (2) that even if a sale was approved, Sullivan had a right of first refusal.[34]

The next important event was the district court's July 12, 2022 decision in the appeal, reversing this Court's September 20, 2021 avoidance judgments, and remanding the adversary proceedings to this Court. *See* discussion in Part II of this Opinion. At the same time, the district court denied the Defendants' motion for a stay pending appeal, as moot. Eventually, the Trustee's Sale Motion was withdrawn, based on the parties' stipulation.[35]

As noted in Part II of this Opinion, one of the issues the district court left to this Court to decide on remand was "the significance, if any, of the [the Defendants'] agreement in February 2022 to a consent judgment for the sale of the properties." The district court expressed no view or opinion about that issue.

The parties' post-remand summary judgment motions are now before the Court for decision.

**VIII. Discussion**

**A. The effect of the Consent Judgment entered in the 363(h) Lawsuit**

The parties make several arguments in their competing motions seeking summary judgment. Some of the Trustee's arguments for seeking summary judgment are based on the

---

[34] *Id.* at pdf p. 2 (emphasis added).

[35] Docket ## 179, 181 in Case No. 20-49216.

Consent Judgment entered in the 363(h) Lawsuit. The Trustee argues that the Consent Judgment now precludes the Defendants from disputing that the Trustee is entitled to avoid the 2018 Transfers. In his initial summary judgment briefing, the Trustee tried to support this conclusion with theories of waiver, estoppel, and "equitable mootness."[36] The Defendants disputed the Trustee's arguments.[37]

After reviewing the summary judgment briefs filed by the parties, the Court entered an order for supplemental briefing about the Consent Judgment. The order raised a somewhat different issue regarding the Consent Judgment, and explained the issue to be briefed in this way:

> The parties have briefed certain arguments concerning the Consent Judgment, but they have not yet explicitly briefed the following issue. The issue is whether the Plaintiff Trustee is entitled to summary judgment in his favor in this adversary proceeding, because of the effect of the Consent Judgment under either the doctrine of res judicata, or the doctrine of collateral estoppel, or both. The issue arises, in part, because it appears that the Consent Judgment's express authorization for the Trustee to sell the Arkansas real estate at issue "under 11 U.S.C. Section 363(h)" (see Consent Judgment at ¶¶ 1, 2), and the other provisions of the Consent Judgment, necessarily imply that the bankruptcy estate owns a one half interest in each parcel of the Arkansas real estate at issue. For example, a bankruptcy trustee cannot obtain authority to sell property under § 363(h) unless the bankruptcy estate owns an interest in the property. See 11 U.S.C. §§ 363(h), 363(b), 363(a).[38]

The parties filed supplemental briefs addressing the issue. Not surprisingly, the Trustee

---

[36] *See, e.g.*, Trustee's Resp. to Def.'s Mot. for Summ. J. (Docket # 75 in Adv. No. 21-4087) at pdf pp. 22-24; Br. in Supp. of Trustee's Mot. for Summ. J. (Docket # 76 in Adv. No. 21-4087) at pdf pp. 20-22.

[37] *See, e.g.*, Defs.' Br. in Opp'n to Trustee's Mot. for Summ. J. (Docket # 77 in Adv. No. 21-4087) at pdf pp. 7-11, 21-26.

[38] Order Regarding the Pending Mots. for Summ. J. [etc.] (Docket # 90 in Adv. No. 21-4087; Docket # 87 in Adv. No. 21-4088) at ¶ 1 (footnote omitted).

19

argued that the Consent Judgment precludes the Defendants from contesting the avoidability of the 2018 Transfers, under the doctrines of res judicata and collateral estoppel. And the Defendants took the opposite position.

The Court has considered the competing arguments of the parties, and the evidence in the record, about the effect of the Consent Judgment, and the Court concludes as follows:

First, it is clear, and cannot be genuinely disputed, that in agreeing to the entry of the Consent Judgment, neither the Trustee nor the Defendants intended that the Consent Judgment would preclude the Defendants from continuing to prosecute their pending appeal in the district court, in which they sought the reversal of this Court's summary judgment decision avoiding the 2018 Transfers. That is shown by the facts that (1) the Consent Judgment said nothing about the pending district court appeal; (2) none of the parties took any action in the district court appeal to seek a dismissal of the appeal based on the Consent Judgment; and (3) instead, the parties left the district court appeal, which by then had been fully briefed, pending for another four months, for a decision on the merits.

Second, it is also clear, and cannot be genuinely disputed, that in agreeing to the entry of the Consent Judgment, neither the Trustee nor the Defendants intended that if the Defendants were successful in the pending district court appeal, they could not then continue to contest the avoidability of the 2018 Transfers.

Third, it is also clear, and cannot be genuinely disputed, that the parties' purpose in agreeing to the entry of the Consent Judgment was not to resolve in any way the avoidability of the 2018 Transfers, the subject of which was on appeal. Rather, the parties' purpose was limited to resolving the issue of whether, assuming this Court's avoidance judgments continued in effect,

20

the four elements in Bankruptcy Code § 363(h)(1) through § 363(h)(4) were met,[39] so that there could be a sale of the co-owners' interests in the Arkansas properties.  In entering into the Consent Judgment, the Defendants waived any right to dispute the elements of § 363(h)(1) through § 363(h)(4).

Fourth, and of great significance, the Trustee's 363(h) Lawsuit and the Consent Judgment clearly were *based on* this Court's summary judgment decision avoiding the 2018 Transfers.  That is clear from the Trustee's complaint in the 363(h) Lawsuit, quoted in Part VII of this Opinion, and from the other circumstances.  The Wylie bankruptcy estate could not have any interest in the Arkansas properties at all, but for the avoidance of the 2018 Transfers.  That is the only thing that gave the bankruptcy estate any ownership interest in the properties.  Without such

---

[39]  Section 363(h) states:

> (h) . . . the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> > (1) partition in kind of such property among the estate and such co-owners is impracticable;
> >
> > (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> >
> > (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> >
> > (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

an interest in the properties, the Trustee could not possibly sell the Arkansas properties under

§ 363(h). By its terms, that section applies only when both the bankruptcy estate and one or

more co-owners each have an interest in the property to be sold.

It is significant that the Consent Judgment was based on this Court's summary judgments

avoiding the 2018 Transfers. One reason why this is so is because of Fed. R. Civ. P. 60(b)(5).

That rule applies in bankruptcy cases under Fed. R. Bankr. P. 9024, and provides:

> On motion and just terms, the court may relieve a party . . . from a
> final judgment, order, or proceeding for the following reasons:
> . . .
>
> (5) **the judgment** has been satisfied, released, or discharged; it **is
> based on an earlier judgment that has been reversed or
> vacated**; or applying it prospectively is no longer equitable[.]

Fed. R. Civ. P. 60(b)(5) (emphasis added).

Under this rule, the Defendants would be entitled to relief from the Consent Judgment,

even if the Court concluded that the Consent Judgment otherwise precluded the Defendants from

contesting the avoidability of the 2018 Transfers. The Defendants would be entitled to relief

from the Consent Judgment, "on motion and just terms," because the Consent Judgment clearly

is "based on an earlier judgment that has been reversed or vacated." Although the Defendants

have not expressly invoked or cited Rule 60(b)(5), the Court construes the Defendants' summary

judgment motions, among other things, as seeking, in substance, relief from the Consent

Judgment under Rule 60(b)(5).

The relief to be given to Defendants from the Consent Judgment, based on Rule 60(b)(5),

would be limited relief. "Just terms" under Rule 60(b) would require that the Consent Judgment

not be vacated entirely, but rather that it now only be construed to conclusively resolve any issue

22

about the elements under §§ 363(h)(1) through 363(h)(4), in the Trustee's favor. This effect of the Consent Judgment will matter only if, after the district court's remand, the Trustee once again prevails in avoiding the 2018 Transfers.

Whether the Trustee will so prevail remains to be seen, after a trial. If, after trial, this Court ultimately enters a judgment once again avoiding the 2018 Transfers, then the Consent Judgment will preclude the Defendants from disputing that the elements of §§ 363(h)(1) through 363(h)(4) are satisfied with respect to a sale of the Arkansas properties.

But the Consent Judgment does not preclude the Defendants from continuing to dispute that the 2018 Transfers are avoidable. If and to the extent relief from the Consent Judgment is necessary to reach that result, it is granted, and the Court's orders will so provide.

## B. Other summary judgment issues

On the current record in these two adversary proceedings, the Court concludes that genuine issues of material fact preclude granting summary judgment in favor of the Plaintiff Trustee or in favor of either of the Defendants, on any count in the Plaintiff's complaints.

Such genuine issues include the following:

A. As to Count II of the Complaint,[40] whether the Debtors Jason Wylie and Leah Wylie made the 2018 Transfers "with actual intent to hinder, delay, or defraud" any creditor, within the meaning of 11 U.S.C. § 548(a)(1)(A).

B. As to Count I of the complaint, whether the Debtors Jason Wylie and Leah

---

[40] Here the word "Complaint" refers to (1) the Trustee's First Amended Complaint filed in Adv. No. 21-4087 (Docket # 13); and (2) the Trustee's First Amended Complaint filed in Adv. No. 21-4088 (Docket # 13).

Wylie "received less than a reasonably equivalent value in exchange for" the 2018 Transfers, within the meaning of 11 U.S.C. § 548(a)(1)(B)(i). This issue includes the following sub-issues:

> i. Whether, just before making the 2018 Transfers, the Debtor Jason Wylie and/or the Debtor Leah Wylie held only legal title to a one half interest in the Arkansas properties at issue, subject to an implied trust, such as a resulting trust of the type(s) described in the district court's July 12, 2022 opinion, under Arkansas law, in each Defendant's favor.
>
> ii. Alternatively, whether, just before making the 2018 Transfers, the Debtor Jason Wylie and/or the Debtor Leah Wylie owned legal and equitable title to an undivided one half interest in each of the Arkansas properties at issue, with a right of survivorship, not subject to any implied or resulting trust under Arkansas law.

There is a conflict in the evidence about these issues that precludes summary judgment. For example, evidence that tends to support the Defendants' position includes the Declarations under Penalty of Perjury by the Defendants and by the Debtors, Jason Wylie and Leah Wylie. But the Trustee challenges the credibility and truthfulness of those Declarations, with evidence including circumstantial evidence, and the Court is not required to believe the Declarations, particularly at this summary judgment stage of the cases. And there is evidence, including circumstantial evidence, and other grounds, that tend to support the Trustee's position. This includes (1) the wording of the 2014 and 2017 warranty deeds by which the Defendants transferred interests in the Arkansas properties to Jason Wylie; (2) the fact that those deeds were

drafted by an Arkansas attorney for the Defendants, and that under Arkansas law the Defendants could have used a "beneficiary deed,"[41] but did not do so; (3) the rebuttable presumption under Arkansas law that the 2014 and 2017 deeds were intended simply as gifts from one family member to another, rather than a transfer of mere legal title only;[42] and (4) the timing of the 2018 Transfers and the Debtors' insolvency and other financial circumstances at that time.

There is no genuine issue of material fact regarding the following elements of the Plaintiff Trustee's avoidance claims, and these elements are deemed established in each adversary proceeding, including for purposes of trial:

> A.  Each of the 2018 Transfers was a "transfer of an interest of the debtor [*i.e.*, the Debtor Jason Wylie and also possibly the Debtor Leah Wylie] in property" within the meaning of 11 U.S.C. § 548(a)(1).
>
> B.  Each of the 2018 Transfers "was made . . . on or within 2 years before the date of the filing of the petition [*i.e.*, the bankruptcy petition filed by the Debtors Jason

---

[41]  Under Arkansas law, it was and is possible, and would have been effective, to give a "beneficiary deed," which "is a deed without current tangible consideration that conveys upon the death of the owner an ownership interest in real property . . . to a grantee designated by the owner and that expressly states that the deed is not to take effect until the death of the owner." Ark. Code Ann. § 18-12-608(a)(1)(A).  The 2014 and 2017 warranty deeds did not include this language, and therefore were not beneficiary deeds.

[42]  *See, e.g.*, *United States Trustee v. Beard* (*In re Beard*), 595 B.R. 274, 288 (Bankr. E.D. Ark. 2018); *see also Walker v. Hooker*, 667 S.W.3d 637, 642 (Ark. 1984) (discussing such rebuttable presumption in the situation where a purchase money resulting trust otherwise might arise); Restatement (Second) of Trusts § 405, Comment (a) (Am. L. Inst. 1959) (updated 2023) (stating the general rule that "[w]here a transfer of property is made without consideration, the inference is that the transferor intends to make a gift to the transferee, not that he intends that the transferee should hold the property for the benefit of the transferor. This is true even though it appears in the instrument of conveyance that no consideration is paid for the conveyance.").

Wylie and Leah Wylie]"[43] within the meaning of 11 U.S.C. § 548(a)(1).

C.  Each of the 2018 Transfers was made for no consideration.

D.  The Debtors Jason Wylie and Leah Wylie both were "insolvent on the date that [the 2018 Transfers were] made" within the meaning of 11 U.S.C. § 548(a)(1)(B)(ii)(I).[44]

## IX.  Conclusion

For the reasons stated above, the Court will enter orders in each of these adversary proceedings, denying each party's summary judgment motion, subject to the limited relief from the Consent Judgment described in Part VIII.A of this Opinion.

Signed on October 5, 2023



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[43]  The bankruptcy petition was filed on August 27, 2020.

[44]  *See, e.g.*, Answer to Compl. (Docket # 5) at ¶ 26 ("Defendant admits that the [T]ransfer was within 2 years of the Petition and while the Debtors were insolvent, . . . .").

26